That, however, is not this case. This corporation does do much business in Philadelphia and has an office here; its president resides in Philadelphia. Take the facts admitted in the deposition of Edward J. Hasse, secretary of the company. He resides in Philadelphia county as also the president; the company has an office in the Bullitt building in that city which is occupied by the secretary and the company's typewriter; much of the correspondence of the company is carried on from that office; the board of directors meets there; the corporate seal is part of the year kept there and there affixed to the corporate documents; part of its banking business is transacted in Philadelphia county; its stock certificates are there attested and issued; the company's ledger account is kept there, and much other corporate business is there transacted. While the roadbed is in Delaware county, and has there what the secretary calls its principal office in which the stockholders meet, and where much other company business is transacted, these facts do not weaken the significance of the corporate acts done in Philadelphia county. The corporation as an artificial person, really, has a constant existence in both counties and may be sued in either if proper service in either case be had upon the proper officers. The facts in this case clearly take it out of the scope of the decision in Bailey v. The Railroad Company supra, and we think the court below should have so held. Any doubt as to the legality of the manner of service on the president, was not raised in the court below, nor is it questioned here, therefore we pass no opinion on that point.

The decree is reversed, and it is directed that the rule to set aside the service of the summons be discharged.

---

# Price, Appellant, v. Hurley.

*Equity—Equity practice—Multifariousness—Remedy at law.*

A bill in equity filed by a firm of stockbrokers and three of their customers against another firm of stockbrokers, and four of their customers alleging a conspiracy on the part of the defendant to puff the value of certain stocks which the plaintiffs had purchased from the defendants, and alleging that the plaintiffs each for himself had bought stock upon the misrepresentations of the defendants, and praying for a money decree in

favor of certain of the plaintiffs, against some but not all of the defendants, is demurrable both because of multifariousness and because the plaintiffs have an adequate remedy at law.

Argued Jan. 16, 1902.   Appeal, No. 293, Jan. T., 1901, by plaintiffs, from decree of C. P. No. 2, Phila. Co., March T., 1900, No. 1,083, sustaining demurrer to bill in equity in case of Theodore H. Price, William G. McCormick, Ralph M. Stuart-Wortley and Bernard J. Harrison, Copartners, trading as Price, McCormick & Company, and Leo Bloch, Ludwig Stein and John V. L. Pruyn, v. William H. Hurley, Jr., and John W. Sparks, now or late Copartners, trading as William H. Hurley, Jr., & Company and R. Evans Peterson, R. Walter Peterson, William J. Winder and Clarence B. Kugler.   Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Bill in equity for discovery and an account.

The bill averred:

That Price, McCormick & Company were stockbrokers in New York city and William H. Hurley, Jr., & Company were in the same business in Philadelphia; that during February, 1899, and prior thereto, the offices of said two firms were connected by private wire, the latter acting as the Philadelphia agents for the former.

That on the 16th, 17th and 18th days of February, 1899, said Hurley & Company sent over the private wire optimistic telegrams advising and urging the purchase by Price, McCormick & Company's clients of stock of the Electrozone Commercial Company, that relying on the truth of the representations contained in said telegrams, Price, McCormick & Company instructed Hurley & Company to buy three lots aggregating 1,400 shares of said stock, and in due course the latter forwarded certificates for that amount of stock, which they represented they had purchased at certain prices per share, the prices varying for different lots; that Price, McCormick & Company paid in full for said stock to Hurley & Company; that said orders were given by Price, McCormick & Company in their own names, but really as agents for Leo Bloch, Ludwig Stein and John V. L. Pruyn, undisclosed principals, said principals having been induced to buy by the statements contained in the

telegrams sent by Hurley & Company, which had been shown by Price, McCormick & Company to Bloch, Stein and Pruyn.

That neither Price, McCormick & Company nor Bloch, Stein or Pruyn knew anything about Electrozone stock except as represented in the telegrams.

That in all these transactions, Hurley & Company acted as Philadelphia agents for Price, McCormick & Company, and were paid commissions therefor.

That the representations contained in the telegrams were false and fraudulent and made by Hurley & Company with intent to mislead the plaintiffs for the purpose of selling to them stock which had no intrinsic value. That the stock began almost immediately after these sales to decline and has no market value.

That a number of the shares sold were at the time of sale the property of Hurley & Company, a number were also the property of one of the members of said firm, the respective amounts being unknown to plaintiffs. That Hurley & Company never disclosed this fact to plaintiffs or any of them and plaintiffs were ignorant of the fact and supposed the stock had been regularly purchased of third parties.

That as to other shares, the amounts being unknown to plaintiffs, Hurley & Company were acting as brokers and agents for R. Evans Peterson, R. Walter Peterson, William G. Winder and Clarence B. Kugler for the sale thereof at the time of the telegrams and the orders, without disclosing the fact and without the knowledge of plaintiffs.

That Hurley & Company, R. Evans Peterson, R. Walter Peterson, William G. Winder and Clarence B. Kugler, owning a large amount of said stock, amount being unknown to plaintiffs, knowing the stock to have no intrinsic value combined and conspired to put their stock upon the market and by improper and fraudulent means advance its price, and did in pursuance thereof so advance it and by the representations contained in the aforesaid telegrams induce plaintiffs to purchase their stock.

That plaintiffs offer to redeliver the shares, except 100 resold by them.

That plaintiffs had no knowledge of the true state of facts until shortly before filing the bill.

That plaintiffs prayed discovery by Hurley & Company of the number of shares sold by members of the firm, together with the price and number of the certificates.

That they also prayed discovery by R. E. Peterson, R. W. Peterson, Winder & Kugler, together with the numbers of shares, price and numbers of certificates sold for their account to plaintiffs. Also that defendants repay to plaintiffs the amounts respectively received by them for said stock, except as to the 100 shares resold, proper credit for which will be given, and that the sales be all totally rescinded.

That plaintiffs also prayed that Hurley & Company be decreed to repay the commissions paid them, and for general relief.

Defendants demurred on various grounds and the court sustained the demurrers, but filed no opinion.

*Error assigned* was decree sustaining demurrer to bill.

*Joseph S. Clark,* for appellants.

*Ira J. Williams,* with him *S. P. Rotan, Alex. Simpson, Jr.,* and *Francis Shunk Brown,* for appellee.

PER CURIAM, February 24, 1902 :

No reasons were given by the court below for dismissing the bill but it is manifest that the bill is multifarious and that so far as it sets out a cause of action it is one cognizable at law.

Decree affirmed.

---

# Keim's Estate.

| 201 | 609 |
| 21 SC [1] | 67 |
| 201 | 609 |
| e214 | [1]640 |
| 201 | 609 |
| f40SC | 552 |

*Partition—Will—Conversion.*

Where a testatrix directs that all the rest, residue and remainder of her estate, real and personal shall be divided into four equal parts, and authorizes her executors to sell the estate in order to accomplish this purpose, and it appears that a sale of the real estate is an absolute necessity from the fact that there is but little personal estate, and that a very large sum of money is to be deducted from one of the shares, the will works a conversion of the real estate into personalty so as to completely bar any proceedings in partition.